UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Laura Rogers-Martin,                          :      Case No. 1:13-cv-544
                                              :
          Plaintiff,                          :
                                              :
vs.                                           :
                                              :
Commissioner of Social Security,              :
                                              :
          Defendant.                          :


**ORDER**

Before the Court are Plaintiff's objections to the Magistrate Judge's Report and Recommendations.  (Doc. 16)   Plaintiff generally objects to the Magistrate Judge's recommendation that this Court affirm the final decision of the Commissioner denying Plaintiff's application for disability benefits for the period prior to April 2011.  (Doc. 15)

For the following reasons, the Court overrules Plaintiff's objections.

**FACTUAL BACKGROUND**

Laura Rogers-Martin filed her first application for disability benefits on April 15, 2003.  Her first application was denied by an ALJ on June 21, 2006, and she did not appeal that decision.   Therefore, as the Magistrate Judge noted, the Commissioner's determination of non-disability through June 21, 2006 is final and binding on this Court. Rogers-Martin filed a new application for disability benefits on June 24, 2006, alleging a disability onset date of June 22, 2006; that onset date was apparently suggested by a state disability examiner, as it was the first available date following the prior unfavorable decision.   (See TR 317)  Rogers-Martin alleged both physical and mental impairments

that precluded her from working.  After her application was administratively denied, an ALJ conducted an evidentiary hearing on October 29, 2009 at which Rogers-Martin and a vocational expert testified.  The ALJ's December 14, 2009 decision (TR 167-187) concluded that Plaintiff was not disabled. The Appeals Council vacated that decision, finding that the ALJ failed to adequately address the opinion of Dr. Mervet Saleh, one of Rogers-Martin's treating physicians.  (TR 189-190)

On remand, the ALJ conducted a second evidentiary hearing on December 21, 2011, at which Rogers-Martin, her daughter, and another vocational expert testified. (TR 79-139)  The ALJ issued a partially favorable decision on March 6, 2012.  (TR 12-36)  He found that Rogers-Martin was disabled as of April 29, 2011, but not prior to that date.  Plaintiff's insured status for disability benefits expired on June 30, 2008, however, and the partially favorable decision does not entitle her to an award of disability benefits. After the Appeals Council denied her request for review, she filed this lawsuit to challenge the ALJ's determination that she was not disabled at any time before April 29, 2011.

The record establishes that Plaintiff was born in 1964, and has a high school education.  She previously worked in several industrial jobs, including bailing machine operator and plastic injection mold machine tender.  She sustained two work-related injuries; the first was in 1999 when she attempted to lift something at work, and injured her back.  She was diagnosed with a bulging disc at L5-S1 in February 2000.  She received conservative  treatments for back pain, including nerve blocks and pain medication, over the years pursuant to an approved worker's compensation medical claim.  She also injured her right shoulder at work in early 2003 and also received

-2-

treatment for this injury through worker's compensation. Plaintiff has not had surgery for either of these conditions. Medical evidence relevant to her prior application reflects that she reported mental and psychological problems as early as 2002, including depression and anxiety.

The ALJ found that Plaintiff has severe impairments of chronic low back pain; intermittent myoclonic jerking;[1] cervical spine and right shoulder arthralgias; depression; and anxiety. (TR 20) The definitive cause of the myoclonic jerking has apparently not been determined, but several examiners observed the condition and documented descriptions of it in the medical evidence. Plaintiff was admitted for inpatient psychiatric care in September 2006, complaining of suicidal thoughts and acute depression. The records from that admission indicate that Plaintiff is a recovering alcoholic. At the ALJ hearing, she admitted to periods of alcohol abuse, one of which apparently contributed to a second hospital admission on October 22, 2006 for two days. (TR 502-530) To her credit, she testified that she quit drinking on October 23, 2006, and there is no evidence in the record suggesting that she has relapsed. She has received psychological counseling, and has been prescribed several different anti-depressants and anti-anxiety medications over the years.

The ALJ found that Plaintiff's impairments did not meet or equal the Listings for joint dysfunction, spinal disorders, or any other listed impairment. He concluded that she had mild restriction in activities of daily living; moderate difficulties in maintaining

---

[1] Myoclonus refers to a quick, involuntary muscle jerk; hiccups are a common and usually benign form of myoclonus. See www.mayoclinic.org/diseases-conditions/myoclonus, last accessed June 19, 2014.

social functioning, and in concentration, persistence or pace; and one to two episodes of extended decompensation. (TR 21) Based upon her hearing testimony, the ALJ found that Plaintiff is capable of performing daily living activities, such as caring for her dogs, reading the paper, preparing some meals, handling her personal care, and performing some household chores. She is able to drive a car, and occasionally goes shopping. The ALJ also found that she has moderate limitations in relating to others in the workplace due to record evidence of irritability, poor impulse control, and sociopathic tendencies. (TR 21, citing TR 545-548, a psychological RFC assessment by a state non-examining reviewer on November 7, 2006.)

Based on these findings, the ALJ formulated Plaintiff's residual function capacity, finding her capable of sedentary work with the following additional restrictions: occasionally climbing stairs; no climbing ropes, ladders, or scaffolds; no balancing; only occasional stooping and crouching; no kneeling and crawling; no exposure to hazards; can stand and/or walk no more than four hours per eight-hour day; no work above the shoulder level on the right side; no repetitive use of foot controls; only low stress jobs requiring no production quotas or fast-paced work; she is able to perform only simple, one or two-step tasks requiring little, if any concentration; and no exposure to vibrations. (TR 22)

Regarding Plaintiff's subjective descriptions of her impairments, the ALJ found them to be inconsistent with the record as a whole and not entirely credible. He noted her claims that she is unable to work, cannot stand for any significant period of time, and cannot maintain balance. She testified at the hearing that she can perform several daily living activities, specifically taking care of her two dogs, cooking some meals, and

-4-

doing the dishes. She said that she can walk about two blocks, sit for up to 20 minutes, and can lift 10 pounds. The ALJ agreed that she has limitations, but found that her functional abilities are not those of someone who is disabled. (TR 23)

The ALJ then discussed the conclusions of Dr. Danopulos, who examined Plaintiff on November 14, 2006 on behalf of the state in connection with her disability application. He observed her involuntarily jerking and shaking every two to three seconds during that examination, and noted her statement that she had been seen by a neurologist who had not been able to diagnose the problem. Dr. Danopulos doubted that a brain MRI had been performed, and recommended that one be obtained. Plaintiff also told Dr. Danopulos that she drank heavily for thirty years, but had quit fifteen years ago. (TR 554) He concluded that Plaintiff was precluded from working as a result of her myoclonic jerking condition. (TR 556-557) (The Court notes that Dr. Danopulos was apparently not aware of the results of Plaintiff's brain MRI which had been performed during her inpatient hospitalization in September 2006, and which revealed no abnormalities. See TR 478.)

The ALJ disagreed with Dr. Danopulos' opinion that Plaintiff was disabled, finding there was no evidence at the time of his examination or thereafter that Plaintiff's myoclonic jerking is in fact disabling. Another state non-examining physician (Dr. Walter Holbrook) concluded that Plaintiff was capable of light work. He recognized the involuntary shaking but noted that she had no atrophy or sensory deficits. (TR 563) Dr. Holbrook largely adopted the RFC articulated by the previous ALJ's June 21, 2006

decision, per the Drummond Ruling. (TR 563)[2] The June 2006 ALJ's decision found Plaintiff capable of light work with restrictions; see TR 148. The ALJ's current decision adopted much of Dr. Holbrook's assessment, but concluded that Plaintiff was only capable of sedentary work, with additional restrictions that he found to adequately account for her current functionality. (TR 23)

Regarding Plaintiff's back pain, the ALJ noted her treatment with a chiropractor and found that the record showed that her pain is not consistent or severe. In September 2009, the chiropractor noted that she was improving slightly. And at that time Plaintiff's treating psychologist, Dr. Payne, noted that she needed to get more activity and have less sedentary time.

The ALJ then addressed the opinions of Dr. Saleh, Plaintiff's treating pain specialist, as directed by the Appeals Council in its order of remand. Dr. Saleh has treated Plaintiff for her back pain since May 2002, per her worker's compensation medical claim. Dr. Saleh wrote a letter on July 31, 2006, opining that Plaintiff could not lift, carry, push or pull anything more than 5-10 pounds; could not sit, stand or walk for more than ten minutes; and needed a constant change of position. She could not climb, kneel, crawl, twist, bend or reach above her head. She had significant deficits with short-term memory, depression and anger. Dr. Saleh believed that Plaintiff was unable to return to or obtain gainful or sustained employment, and that she was permanently

---

[2] See Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997), finding that res judicata applies to Social Security administrative proceedings, and that the Commissioner is bound by prior findings unless new evidence or changed circumstances require a different result. This holding is incorporated in the Social Security Acquiescence Ruling 98-4(6), 1998 SSR LEXIS 5.

and totally disabled as a result of her allowed conditions. (TR 588-589) In a

subsequent February 2008 RFC disability assessment, Dr. Saleh opined that Plaintiff

was restricted to lifting 2-5 pounds occasionally, and one-half to 2 pounds frequently;

she could not stand or walk more than 30 minutes in an entire day, or sit for more than

30 minutes at a time. She would miss more than three days of work per month,

rendering her disabled. The ALJ rejected these opinions:

> Dr. Saleh's conclusions are inconsistent with the
> record as a whole and are not supported with objective
> medical findings. As will be discussed below, at the time of
> the hearing, the claimant has been found to be disabled.
> However, even at that time, she testified that she can lift 10
> pounds, stand up to 20 minutes at a time, and walk up to two
> blocks. She is able to perform extensive activities of daily
> living. In addition, such limitations are not supported by the
> above discussed conclusions that her pain is only
> intermittent and that she needs more exercise and less
> sedentary time.

> In sum, the above residual functional capacity
> assessment is supported by the record as a whole. The
> claimant's physical impairments have been treated only with
> conservative care; she has had no recent hospitalizations;
> and she has no side effects from medication. Her mental
> impairments are being treated with medication. However,
> she is receiving no counseling, which does not support a
> disabling mental impairment. Therefore, it is reasonable to
> conclude that the above residual functional capacity will
> address the limitations resulting from the claimant's
> impairments, whether they are viewed individually or in
> combination.

(TR 25)

The ALJ then addressed his conclusion that as of April 29, 2011, Plaintiff's

functional capacity had declined to the extent that she was disabled. He based this

conclusion primarily on the opinion of Plaintiff's treating family physician, Dr. Grau, who

completed an RFC assessment on that date. Dr. Grau opined that Plaintiff was unable to sustain even sedentary work. Dr. Saleh also submitted an updated report dated October 4, 2011, and noted Plaintiff's poor concentration and ability to stay on task. The ALJ found that while Plaintiff's basic limitations have been relatively consistent throughout, her symptoms had recently increased and that she is even more isolative than she was before. Both Dr. Grau and Dr. Saleh opined that by 2011, Plaintiff was unable to perform even sedentary work.

Based upon the testimony of the vocational expert at the 2011 hearing, the ALJ concluded that there were existing jobs in significant numbers that Plaintiff was capable of performing within the limitations of the RFC he articulated for the period prior to April 29, 2011. For this reason, he concluded that Rogers-Martin was not disabled prior to April 29, 2011. (TR 28)

Plaintiff unsuccessfully sought review of this decision by the Appeals Council, and then commenced this lawsuit seeking an award of disability benefits as of June 22, 2006. The Magistrate Judge found that the ALJ's finding of non-disability is supported by substantial record evidence, and recommended that it be affirmed. She rejected Plaintiff's claims of error regarding the ALJ's consideration of the opinions of Dr. Saleh and Dr. Payne, her treating physicians. With regard to Dr. Saleh, the Magistrate Judge generally agreed with the ALJ's conclusion that her 2006 and 2008 opinions regarding Plaintiff's functional limitations were not supported by the record and were inconsistent with the Plaintiff's own testimony. Dr. Payne opined that Plaintiff has marked to extreme deficiencies in all areas of psychological function. The ALJ found that these opinions were not supported by the medical evidence, and were inconsistent with Dr. Payne's

-8-

other opinions that Plaintiff has a very good ability to understand, remember and carry out simple job instructions. The Magistrate Judge concurred in this finding, noting that the majority of Dr. Payne's records predate the claimed disability onset date, and those that post-date it are cursory progress notes. (Doc. 15 at 18) The Magistrate Judge ultimately concluded that, while Plaintiff's impairments and limitations are no doubt real, and that the record could support more than one conclusion, the ALJ's decision falls within the legitimate "zone of choice" that is supported by substantial evidence in the record. (Id. at 21)

Plaintiff objects, contending that the ALJ erred in rejecting the opinions of Dr. Saleh and Dr. Payne. (Doc. 16)

## ANALYSIS

Standard of Review

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's final decision by determining whether the record as a whole contains substantial evidence to support that decision. "Substantial evidence means more than a mere scintilla of evidence, such as evidence a reasonable mind might accept as adequate to support a conclusion." LeMaster v. Secretary of Health and Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted). The evidence must do more than create a suspicion of the existence of the fact to be established. Rather, the evidence must be enough to withstand a motion for a directed verdict when the conclusion sought to be drawn from that evidence is one of fact for the jury. Id.

An ALJ's decision that is supported by substantial evidence must be affirmed, even if the Court would have arrived at a different conclusion based on the same

evidence.  Elkins v. Secretary of Health and Human Serv., 658 F.2d 437, 438 (6th Cir.

1981).  The substantial-evidence standard "... presupposes that there is a zone of

choice within which the decisionmakers can go either way, without interference by the

courts.  An administrative decision is not subject to reversal merely because substantial

evidence would have supported an opposite decision."  Mullen v. Bowen, 800 F.2d 535,

545 (6th Cir. 1986) (quoting Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The district court reviews de novo a Magistrate Judge's recommendations

regarding Social Security benefits claims.  Ivy v. Secretary of Health & Human Serv.,

976 F.2d 288, 289-90 (6th Cir. 1992).

Treating Physicians

In Social Security disability evaluations, a treating physician's opinion will be

accorded controlling weight if it is "well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with other substantial evidence

in [the] case record[.]"  Rogers v. Commissioner of Social Sec., 486 F.3d 234, 242 (6th

Cir. 2007).  The ALJ must identify specific reasons for discounting a treating physician's

opinion, reasons that are "sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating source's medical opinion and

the reasons for that weight."  Id.  20 C.F.R. § 404.1527(c)(2) identifies factors the ALJ

should address to determine the weight to be given to the opinion, including the length,

nature and extent of the treating relationship; whether the opinion is supported by

relevant evidence, and is consistent with the record as a whole; the specialization of the

source; and any other factors that support or contradict the opinion.

The regulations further state that, in considering any medical opinion,"... the more

consistent an opinion is with the record as a whole, the more weight [the ALJ] will give

to that opinion."  20 C.F.R. § 404.1527(c)(4).   More weight is generally given to an

examining source than to a non-examining reviewer, but the weight accorded to any

medical opinion must be based on the evidence that supports it, and its consistency

with the record as a whole.

Dr. Saleh

        The ALJ found that Dr. Saleh's July 2006 and February 2008 opinions were

inconsistent with the record as a whole, and were not supported with objective medical

findings.   The ALJ noted that, despite his ultimate conclusion that Plaintiff was disabled

as of  April 29, 2011 (well before the December 21, 2011 hearing), she testified at that

hearing that she could lift 10 pounds, stand for up to 20 minutes at a time, and walk two

blocks, as well as perform many activities of daily living.  In addition, at the October 29,

2009 hearing, Plaintiff testified that she drove about three times a week, could vacuum

her living room and clean the bathroom, and do the dishes.  She could walk about three

blocks, sit for about 20 minutes and stand for five minutes.  She could lift ten pounds

and climb steps.  She and her husband went camping in their camper that year, and

they went fishing.

        Plaintiff's own testimony contradicts Dr. Saleh's February 2008 RFC assessment,

in which she opined that Plaintiff could only occasionally lift 2-5 pounds, stand or walk

for only one-half hour out of eight hours, and sit for half an hour at a time.  Dr. Saleh

further stated that Plaintiff "is limited by work related injury(s) to [the] point of forcing her

to surrender to the confines of her bed and take additional medication." (TR 743-745)

Yet in the very next question, Dr. Saleh opined that Plaintiff had the residual functional

capacity to do sedentary work (defined as lifting 10 pounds and/or carrying small tools, involving primarily sitting but with alternating sit-stand options, and only occasional walking or standing).  (TR 745-746)

The Magistrate Judge further noted that Dr. Saleh's July 31, 2006 opinion was largely premised on her earlier opinions that Plaintiff was permanently and totally disabled due to her allowed worker's compensation condition.  All of those opinions pre-date the Plaintiff's claimed disability onset date of June 22, 2006, and Plaintiff  cannot avoid the res judicata effect of the June 21, 2006 finding of no disability.  Moreover, the ALJ may properly reject Dr. Saleh's opinion that Plaintiff is "disabled" or unable to work, because that ultimate determination rests with the Commissioner under 20 C.F.R. §404.1527(e)(1).

In addition, the Magistrate Judge noted that the records from the July 2006 through 2008 time frame demonstrate that Plaintiff's myoclonic jerks were more severe in the earlier part of that period.  The Court agrees with this observation.  Dr. Danopulos observed Plaintiff almost constantly shaking during his November 2006 examination on behalf of the state.  Plaintiff was treated by Dr. Saleh with a series of nerve blocks in January-February 2008, and her leg jerks apparently ceased entirely for a time.  Dr. Saleh noted only "mild jerking" in July 2008, but the condition seemed far less intense than during the time surrounding her inpatient hospitalization in September 2006.  Dr. Grau, her family physician, noted during a March 30, 2010 visit that Plaintiff had no jerking movements while observed by the nursing staff in the waiting room.  When Dr. Grau began her physical exam, Plaintiff was sitting in a chair exhibiting jerking of her extremities, but Dr. Grau noted that the jerking resolved during the physical exam.  Dr.

-12-

Grau further noted at a June 24, 2010 visit that Plaintiff "has been doing relatively well but her baseline is poor" due to her chronic conditions.  (TR 942)  Then by the April 29, 2011 visit (when Dr. Grau completed her RFC assessment), the jerking movements had worsened again. Plaintiff herself admits that this condition has "waxed and waned." (Doc. 16 at 15)  The clinical observations over time support the ALJ's conclusion that this chronic condition was not of such a consistent severity that she was disabled from July 2006 forward, as Dr. Saleh opined.

Plaintiff also criticizes the ALJ's reliance on the statement of a non-examining reviewer, Dr. Holbrook, that while she had involuntary shaking, there was no atrophy or sensory deficits.  She argues that those conditions are not required in order to diagnose myoclonus, or to conclude that it can be disabling.  Some severe forms of myoclonus can be debilitating or even fatal, as the fact sheet Plaintiff cites in her objections explains.[3]  The lack of atrophy and sensory deficits noted in Plaintiff's records may not be necessary to a diagnosis of the condition, and the ALJ did find that her intermittent myoclonic jerking was a severe impairment.  But the clinical observations of lack of atrophy and sensory deficits do support the ALJ's conclusion that she was able to walk, stand, and move within the stated limitations despite the intermittent flare-up of her condition.

And as noted above, Dr. Saleh treated her with a series of nerve blocks which greatly improved her pain and her myoclonic symptoms.  After the 2008 blocks, she received another one on June 9, 2009, and in the subsequent June 18 visit with Dr.

---

[3]  See www.ninds.nih.gov/disorders/myoclonus/detail, last accessed June 19, 2014.

Saleh she reported feeling better. At the July 14, 2009 visit, she reported that "this is the best she has felt in a while" after the nerve block injections, and that a new medication (Pristiq) was helping her. (TR 882) Dr. Saleh's recorded observations regarding Plaintiff's spinal examinations do not significantly vary over time, and they generally note tenderness and some swelling. On each visit, Plaintiff was urged to continue with stretching and strengthening exercises, and she consistently reported that use of her TENS unit decreased her pain. During visits in September 2009, Dr. Payne (her treating psychologist) noted that she "needs to get exercise," and that she "needs some activity and less sedentary time." (TR 890-891) All of these observations support the conclusion that her myoclonic jerking was not so consistently severe that she was disabled by it.

After a review of the record, this Court agrees with the ALJ's assessment of Dr. Saleh's opinions. Her opinion that Plaintiff was severely limited in her physical abilities is contradicted by Plaintiff's own testimony, and by objective physical findings contained in both Dr. Saleh's notes as well as those of examining consultants. Dr. Saleh's opinion is internally inconsistent, finding on the one hand that Plaintiff is essentially bed-ridden but on the other that she is capable of sedentary work. The Court finds no error in the ALJ's consideration of Dr. Saleh's conclusions.

Dr. Payne

Plaintiff claims the ALJ erred in discounting the opinions of Dr. Ty Payne, her treating psychologist. Dr. Payne responded to a disability questionnaire on November 9, 2006 based on treatment since September 2004. He stated that Plaintiff was depressed, sad, anxious, angry and suicidal, and had just been released from inpatient

care.  She was easily irritated, and would not deal well with the public.  He noted that Plaintiff's ability to tolerate stress was very poor.  (TR 550-551)   Dr. Payne also completed a psychological RFC assessment on February 7, 2008, but the administrative record does not include Dr. Payne's treatment records between November 2006 and February 2008, or between February 2008 and February 2009.  In any event, Dr. Payne opined in February 2008 that Plaintiff has marked restrictions in all areas of daily living and social functioning, and marked to extreme deficiencies in concentration, persistence, or pace.  (TR 736)  In a cover letter, Dr. Payne opined that Plaintiff was "markedly impaired in her ability to tolerate the stress of competitive employment."  (TR 728)   There are additional treatment records from Dr. Payne from February 27, 2009 to April 26, 2010.  (TR 872-878, 889-893, and 901-916)   These notes include his observations that Plaintiff was anxious about family and financial issues, angry, and depressed.  Treatment was geared to helping her focus on coping skills, relaxation and refocusing herself.

The ALJ gave "minimal weight" to Dr. Payne's RFC assessment.  The ALJ reviewed Plaintiff's mental health diagnoses and treatment history, noting her depression and anxiety and her inpatient hospitalization in September 2006.  (TR 20) He discussed the opinion of Dr. Rosenthal, who conducted a psychological consultative exam for the state.  Dr. Rosenthal found no impairment in Plaintiff's ability to understand, remember, and follow simple one- or two-step instructions, but moderate impairment in her ability to tolerate daily work stress, and to sustain attention and concentration.  Dr. Rosenthal assigned her a GAF score of 55, indicating moderate symptoms and difficulties.  (TR 24, citing TR 471-472)  The ALJ also noted a non-

examining state psychological reviewer who found that Plaintiff had moderate limitations in relating to people in a work setting, in completing a normal work day, and performing activities on a determined schedule. This reviewer also found that Plaintiff was severely limited in adapting to a pressured or stressful work setting involving frequent contact with people. But with continued treatment and sobriety, he found that Plaintiff has the capacity to understand, recall and perform simple and moderately complex tasks in a relatively static work-like setting and with infrequent contact with others, but has severe limitations in dealing with a pressured or stressful work setting involving frequent contact with other people. (TR 24, citing TR 547, Dr. Johnson's review.) The ALJ found that these assessments were consistent with the record as a whole, reflecting moderate limitations in several areas of psychological functioning.

The ALJ concluded that Dr. Payne's opinion was "excessive and inconsistent" with the record as a whole. While some limitations were expected given her impairments, Dr. Payne's opinion of marked to extreme limitations in all functional areas was not supported by the medical evidence or by Plaintiff's own testimony. The ALJ also found Dr. Payne's opinion was internally inconsistent. Dr. Payne opined that Plaintiff had a "good" ability to understand, remember and carry out detailed but not complex job instructions, and an unlimited ability to carry out simple job instructions. The ALJ found that to be inconsistent with Dr. Payne's opinion that she has "marked to extreme" deficiencies of concentration and persistence. For these reasons the ALJ gave minimal weight to Dr. Payne's assessment.

The Magistrate Judge concurred with the ALJ in finding little clinical evidence to support Dr. Payne's February 2008 assessment. She found that Dr. Payne's "extremely

cursory progress notes" do not support his opinion that Plaintiff is markedly impaired in all functional areas. (See Doc. 15 at 18) The Court has reviewed Dr. Payne's treatment records and must agree with this observation. For instance, in the summer of 2006 Dr. Payne noted that Plaintiff was "very agitated" and he attempted to calm her (TR 685-686); on June 1, 2009, he noted "confusion" and an irritable mood (TR 873); on July 7, 2009, Dr. Payne noted her irritability was down (TR 872); and on September 1, 2009, he noted "seems confused. Somewhat disoriented. Anxious and depressed. Meds are on schedule. No missing or extra." (TR 891) On January 10, 2010, Dr. Payne noted that Plaintiff "laments restrictions/no work. Needs some independent activities." (TR 913) His records consistently record these somewhat cryptic, general observations. But he does not explain why these clinical impressions support his opinion of marked to extreme limitations in **all** areas of psychological functioning, as he stated in his February 2008 assessment. There is no evidence that he performed any objective psychological testing or attempted to objectively measure Plaintiff's functional abilities. The length of his treatment relationship with Plaintiff alone is not sufficient to accord his opinion controlling or substantial weight.

Plaintiff argues that the ALJ erred by stating that she was not receiving counseling as a reason to discount Dr. Payne's opinion. She testified that after her worker's compensation claim refused to pay for further psychological treatment, she could not afford to continue. And just before the ALJ hearing, she submitted an application for no-cost counseling. She argues that a lack of funds with which to pay for treatment cannot support a denial of disability benefits, citing McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990). In his decision, the ALJ stated: "Her mental impairments

are being treated with medication.  However, she is receiving no counseling, which does
not support a disabling mental impairment." (TR 25)  The medical evidence fully
supports the first statement, as there are multiple references to the improvement in
symptoms with several anti-depressant and anti-anxiety medications.  But the ALJ failed
to acknowledge Plaintiff's testimony that the lack of counseling was due to her financial
difficulties.  However, the Court agrees with the Magistrate Judge in finding  that this
failure does not substantially undermine the ALJ's decision with respect to the weight he
accorded Dr. Payne's opinions, which he based on the lack of supporting clinical
evidence, and inconsistency with the record and with Plaintiff's testimony.

Plaintiff also cites Gayheart v. Commissioner, 710 F.3d 365 (6th Cir. 2013),
which she argues supports her contention that the ALJ erred with respect to her treating
physicians.  The Court disagrees.  In Gayheart, the plaintiff sought disability benefits
based on several psychological impairments, including crippling panic attacks,
depression and anxiety.  The ALJ gave little weight to his treating psychiatrist's
opinions, finding they were "not well-supported by any objective findings" and
"inconsistent with other credible evidence."  Id. at 377.  The ALJ instead relied on the
opinions of the state's testifying medical expert and reviewing consultants.  The Sixth
Circuit held that the ALJ failed to provide good reasons for rejecting the treating
psychiatrist's opinions.  The cursory statement that the opinions were "not well-
supported" was ambiguous, because the ALJ did not explain whether the findings that
the psychiatrist did rely on (which were based on a four-year treatment relationship and
which she fully explained in her RFC) were subjective, or if her findings were objective
but her opinions based on those findings were subjective.

-18-

The Sixth Circuit also found that the ALJ ignored important conflicts between the state's testifying expert and the record evidence.  The state's expert initially opined that plaintiff met Listing 12.06, covering anxiety related disorders.  But at a second supplemental hearing, the same expert testified to the opposite opinion.  She did not explain this significant change in position nor identify any new evidence that supported her new opinion.  The ALJ did not address the changed opinion at all: he simply described the last opinion as "well-reasoned" and consistent with the non-examining reviewers' conclusions.  In addition, plaintiff's treating psychiatrist opined that plaintiff's episodic alcohol abuse was not the root of his problem, and that the severity and frequency of his psychiatric symptoms would persist even if he abstained completely. The state's testifying expert could not say that plaintiff's alcohol abuse was material to any finding of disability.  Yet the ALJ concluded that the treating psychiatrist "minimized the impact" of the abuse, and that even if plaintiff was disabled, his incapacity could "only" be attributed to his alcohol abuse, a statement not supported by **any** of the medical opinions.  Id. at 381.

The ALJ's decision in this case does not suffer from the deficits identified in Gayheart.  The ALJ sufficiently explained why he gave little weight to Dr. Saleh's opinions, and minimal weight to Dr. Payne's February 2008 psychological RFC.  His explanations are supported by the clinical evidence he cited.  Plaintiff does not challenge the ALJ's additional assessment that her subjective statements about her impairments are "not entirely credible."  (TR 23)   As the Magistrate Judge noted, the record in this case might support a different interpretation than that placed upon it by the ALJ.  But in such cases, given that substantial evidence supports the ALJ's decision

and absent legal error, this Court must affirm the Commissioner's final decision.

## CONCLUSION

For all of the foregoing reasons, the Court adopts the Magistrate Judge's Report and Recommendation.  Plaintiff's objections to that Report (Doc. 16) are overruled.  The Commissioner's decision denying Plaintiff's application for disability benefits prior to April 29, 2011 is affirmed.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: July 1, 2014                                    s/Sandra S. Beckwith
                                                       Sandra S. Beckwith, Senior Judge
                                                       United States District Court